The opinion of the' court was delivered by
Blanchard, J.
An election for Mayor of the town of Clinton in the Parish of East Feliciana was held, by direction of law, on the 4th day of June, 1,900.
There were two candidates — one the .relator, O. W. Ball; the other the respondent, W. A. Cain.
The relator received forty-seven votes; respondent forty-one votes.
Relator was declared duly elected Mayor for the term of one year, a commission as such issued to him and he qualified thereunder according to law.
The respondent, Cain, was the incumbent Mayor — he ‘having been elected to that office in June, 1899, for the term of one year.
A demand was made upon him for the office by the newly elected Mayor, but- he refused to vacate.
Whereupon the present action was brought, the object of which is to have judicially determined that the relator was elected Mayor, has qualified as such and is entitled to the office, with 'all of its powers, privileges and emoluments.
The allegation is made that the respondent usurps, intrudes into *2121 and unlawfully holds the office of Mayor of Clinton and refuses to surrender the same to the relator.
The defense is a denial of the usurpation and intrusion charged, and the averment that respondent holds the office lawfully by virtue of his election thereto in June, 1899, and is entitled to hold the same, and discharge the functions thereof, until his successor is duly elected and qualified.
The answer then admits that at the election held in June, 1900, for Mayor, whereat relator and respondent were the only candidates, relator received six more votes than did defendant. But it is represented that of the votes returned for the relator fifteen were east by persons who were not qualified voters.
They were not qualified voteSrs, is the contentioji, because of the fact that none of them had paid a poll tax for the years 1898 and 1899 prior to the 31st of December of each of said years as required by the Constitution.
Deducting from the poll these illegal votes, respondent claims that he received a majority of the legal votes cast and is, therefore, the duly elected Mayor of the town of Clinton and entitled to hold the office.
Judgment below was in favor of the-relator and this appeal' by' respondent followed.
The evidence discloses that of the votes polled for the relator at the said election for Mayor, fifteen were cast by persons who had not paid poll taxes for the years 1898 and 1899 previous to the 31st of December of said years respectively.
It further discloses that when the said fifteen votes were cast the exhibition of poll tax receipts was not exacted by the commissioners conducting the election.
There is thus presented squarely the question whether or not the payment of a poll tax is a prerequisite to the exercise of the right to-vote at an election held in the State of Louisiana at the present time.
Whilst the office over which this controversy arises is a small one, the question presented for adjudication is a very large one, since it involves the right or denial of suffrage to many voters at the. approaching presidential and congressional ■ elections in November of the present year, and, indeed, at the municipal elections occurring during the next two years.
Upon the proposition presented, the contention of the relator is that the exhibition of receipts for the payment of the poll tax for two years, *2122 «as a prerequisite, to the exercise of the right to vote, can not be demanded until the year 1902.
Per contra, the contention of the respondent is that under Article 198 of the .Constitution of 1898, receipts for poll taxes for the years 1898 and 1899 must be exhibited by all persons between the ages of 23 ¿mn GO, applying to vote, in every election held in the State from and after the date of the general State election of the year 1900, which was -April 17, 1900.
In other words, that so far as the general State election of the present year was concerned, the poll tax requirement of Article 198 of the Constitution had, by the express terms of the article, no application, but that at all elections thereafter, so long as this article remains as it is, the requirement does apply.
There is thus made necessary an interpretation of the article of the , Constitution aforesaid. What is its meaning and intent?
The article in full is as follows:
“No person less than sixty years of age shall be permitted to vote at any election in the State who shall not, in addition to the qualifications above prescribed, have paid on or before the 31st day of December, of •each year, for the two years preceding the year in which he offers to vote, a poll tax of one dollar per annum, to be used exclusively in aid of the public schools of the parish in which such tax shall be collected; which tax is hereby imposed on every male resident of this State between the ages of twenty-one and sixty years. Poll taxes shall be a lion only upon assessed property, and no process shall issue to enforce the collection of the same except against assessed property.
“Every person liable for such tax shall, before being allowed to vote, -exhibit to the conunissioners of election his poll tax receipt for two years, issued on the official form, or duplicates thereof; in the event of loss; or proof of payment of such poll taxes may be made by a certifieate of the tax collector, which shall be sent -to the commissioner of the several voting precincts, showing a list of those who have paid said two years’ poll taxes as above provided, and the dates of payment. It is hereby declared to be forgery, and punishable as such, for any tax ■collector or other person to antedate or alter a poll tax receipt. Any person who shall pay the poll tax of another or advance him money for that purpose, in order to influence his vote, shall be guilty of bribery and punished accordingly. The provisions of this section as to the payment of poll taxes shall not apply to persons who are deaf and *2123 dumb, or blind,, nor to persons under twenty-three years of age, who have paid all poll taxes assessed against them. This section shall not go into operation until after the general State election to be held in the year 1900, and the Legislature elected in the year 1908 shall have authority to repeal or modify the same.”
Whatever the meaning of this article, it is not couched in language so clear and precise as to leave it free from doubt. Were it otherwise, this suit would not be before us. Lawyers differ as to its meaning. Two constructions are possible, and the grounds of the two are so •equal in relative strength and force that no matter which construction may be adopted the argument by which it is sustained will, likely, not prove satisfactory or convincing to the adherents of the other.
But one of the two must be adopted and put in force, and to this court is assigned the duty, and in it is vested the authority, to do this.
But whatever may be its meaning the article is complete in itself. It is no mere direction to the Legislature. It requires no act of the General Assembly to carry it into operation, nor to give it force and •effect. It is self-acting. It is an executory mandate.
An analysis of its provisions shows that male residents of the State must, in addition to the qualifications for the exercise of the right of suffrage prescribed by other provisions of the Constitution, pay, on or before the 31st of December, of each year, for two years preceding the year in which they offer''to vote, a poll tax of one dollar per annum. 'There are excepted from the operation of this rule those who are sixty .years of age and over, those who are under twenty-three years of age, those who are deaf and dumb and those who are blind.. Those who are twenty-one years of age and under twenty-three years may vote, provided they have paid all poll taxes assessed against them between these ■ages.
The poll tax imposed by this article is the only poll tax the payment •of which is a prerequisite to the exercise of the elective franchise. The article, itself, levies the tax. ■ It is preclusive of all other poll tax requirements. That is to say, it can neither be added to, nor taken from, by subsequent legislative enactment prior to 1908, when by the Legislature elected in that year it may be modified or even repealed. It differs in so many respects from the poll tax levied on voters by laws antedating the Constitution of 1898, that it must be held the framers of the Constitution, without saying so precisely, intended it as sui .generis.
*2124 Observe the language of the Article — no person between the ages-mentioned shall be permitted to vote unless he pays "a poll tax of one dollar per annum;” not the poll tax of one dollar per annum. If the: word “the” had been used instead of the word “a,” in speaking of this-tax, it might be held that “the poll tax” referred to the tax of that character authorized by the then existing laws. But using the words-“a poll tax” shows the framers of the Constitution meant a tax of this kind independent of anything outside of the Constitution itself, whose-Article 198 was dealing with the subject.
Again: — “Every person liable for such tax shall, before being allowed, to vote, exhibit to the commissioners of election his poll tax receipt for two years,” etc. “Such..tas.” — meaning the one spoken of in'the preceding clause of the article as “a poll tax” — the constitutional poll tax. as contradistinguished from "the poll tax” of the- then existing laws.
First, then, distinguishing the poll tax of the Constitution of 1898-from the poll tax which had existed prior to the adoption of that Constitution, the next inquiry is, when did Article 198 go into operation ?
That it did not go into operation upon the adoption of the Constitution of 1898, on the 12th of May, of that year, is clear from the sentence-with which the article concludes, to-wit:—
“This section shall not go into operation until after the general State election to be held in the year 1900.’-’
There can be no doubt, we think, that the word “section” as here-used- meant “article” — that it was intended as meaning the whole-article. The article is not subdivided into sections. While there are-two paragraphs they are not designated as section 1 and section 2, or other like designation, as were the different parts of the preceding-article 19'T.
Observe, the language is not that the provisions of the article shall not apply until after the general State election of 1900. It is that the-article itself shall not go into operation until after that election. That is to say, it and-every part of'it was intended to lie dormant, and' directed to lie dormant, until the general State election of 1900 shall' have been held.
The words “shall not go into operation” have a broader meaning, a more' extended significance, than the words “shall not apply.”
If the latter had been used the meaning would simply have been that' the poll tax requirement of Article 198 was not to effect any election held between the time of the adoption of tha Constitution and the- *2125 holding of the general State election of 1900, inclusive of the latter; but that it should have effect as to all elections subsequent in.date to the general State election of 1900, and as to them the exhibit of two years poll tax receipts must be made or the person offering to vote could not be permitted that privilege.
When, however, the direction of the Constitution is that its Article 198 shall not go into operation until after such a time, the meaning of such language must be held to be that everything pertaining to the article, including the constitutional poll tax it imposes, was suspended until that time arrived, or until the happening of that, to-wit — the' general State election of 1900, which was to quicken it into life. •
This Article 198, then, went into operation only on the day following the general State election of the present year 1900.
This being so, it follows that the first poll tax it imposes, the prepayment of which is prescribed as a prerequisite1 to voting at an election, is that for the year 1900.
In order, then, to vote at any election held after December 81st, 1901, the poll tax receipts for 1900 and 1901, paid on or before December 31st, respectively, of those years, must be exhibited.
It follows, therefore, that the production of the tax receipts for the payment of poll taxes, as a prerequisite to the exercise of the right to vote, can not be demanded until 1902.
At any election held after the beginning of the year 1902, and during that year, the voter can and must produce his poll tax receipts of 1900 and 1901, showing the payment of the constitutional poll tax on or before the 31st of December of the years respectively, because the tax will then have been levied for two years preceding the election. But he can not now produce such receipts for the very good reason that no levy of this constitutional poll tax has yet matured.
It is this purely constitutional poll tax, levied by the Constitution itself, which must be paid as a prerequisite to voting, and not the poll tax of 1898 and 1899 levied by legislation enacted under the Constitution of 18Y9.
The poll tax of those years is held not to be the poll tax with which Article 198 of the Constitution of 1898 deals.
For these reasons, it is ordered and decreed that the judgment appealed from be affirmed with costs.